SIALEGA FAMILY by PAEPAETELE IELUA, Plaintiffs,

v.

TAITO TUI, Defendant.

High Court of American Samoa
Land & Titles Division

LT. NO. 18-85

July 22, 1986

Before REES, Chief Justice, AFUOLA, Associate
Judge, and VAIVAO, Associate Judge.

Counsel: For the Plaintiff, Aviata Fa'alevao
For the Defendant, Asaua Fuimaono

This is a case such as often arises when land
long given over to plantations and family dwelling
places begins to be converted to other and possibly
more lucrative uses. It also presents a difficult
instance of the need to reconcile certain features
of Anglo-American property law, first introduced by
the territorial administration and the courts but
later enacted into statute by the Fono, with the
Samoan customary law that is the principal source
of property rights in American Samoa.

40

The land called Oneoneloa has long been occupied and cultivated by the Taito family. Plaintiffs, the Sialega family, claim that Oneoneloa is one part of their tract of land called Avau and that the ancestors of the Taitos settled there by permission of an ancestor of the Sialegas. The Taitos claim that their ancestors cleared Oneoneloa from virgin bush on their own initiative and have always held it in their own name. In any case, the families apparently lived side by side more or less peacefully until 1985, when the Taitos concluded an agreement with the American Samoa Government by which the government would purchase and remove rocks and dirt from Oneoneloa. The Sialegas sued for damages, preliminary and permanent injunctions, declaratory judgment, attorneys' fees, costs, and such other relief as the court might deem just. The government discontinued its operations on Oneoneloa, and the Taitos brought a counterclaim demanding compensation for interference with their contract and also for mental anguish.

It is difficult to choose between these two fervently held versions of the history of Oneoneloa. There was no specific evidence to contradict the testimony by several witnesses that the Taitos had never in their memories rendered service to the senior matai of the Sialega family, as would have been appropriate had the Taitos been occupying Oneoneloa at the sufferance of the Sialegas. There was, however, testimony to the effect that some elderly members of the Taito family reside to this day in a guest house belonging to the Sialegas and render service to the Sialega family. Nor is it unheard of for a Samoan family to permit guests to reside on family land for long periods of time without rendering service.

There was evidence that on at least two occasions prior to the present dispute, once in 1968 and again in 1982, matais of the Taito family asserted that Oneoneloa was their family land in legal documents required by law to be conspicuously posted and publicly recorded. The fact that such assertions were made and that neither the Sialega family nor anyone else objected is of some evidentiary value, but is not dispositive of title to the property.

One witness called by the Sialega family, High Chief Lavata'i, testified that his land is bounded

41

on the east by a Sialega property called Gaoteote,[1] but that to the east of Gaoteote is land called Oneloa belonging to a relative of the Taito family. When pressed by counsel for the plaintiffs, Lavata'i said he could not say for sure whether the people living on Oneoneloa were its owners, but that "since I was born I saw this family live on this land." High Chief Lavata'i is sixty-four years old.

In support of their assertion that the Taito family has always been occupying Oneoneloa as guests of the Sialega family, the plaintiffs emphasize that Oneoneloa is considered part of the village of Nu'uuli, whereas the Taito family is a family of Faganeanea. Although it is true that under Samoan custom a family generally owns communal land only in the village with which the family is principally associated, it is important to notice the precise location of this land and the circumstances under which the area was settled. Oneoneloa is on the main road between Nu'uuli and Faganeanea, slightly closer to the center of Nu'uuli but substantially less than a mile from the center of Faganeanea. The adjacent Sialega land called Avau, on the other hand, is slightly closer to the center of Faganeanea than to the Center of Nu'uuli. The undisputed testimony is that either the Sialegas or the Taitos or both cleared all of this land from virgin bush. At that time, to have described Oneoneloa or Avau as being "in" Nu'uuli or Faganeanea would have been just another way of saying that the family which had settled the land was a family of that nearby village. Indeed, as recently as 1982 a building permit procured by Fa'alai Taito from the Department of Public Works and posted at Oneoneloa represented the land as being in Faganeanea, although it is more often regarded as part of Nu'uuli. If either the fa'a Samoa or the twentieth-century mapmaker's felt need for neatness were deemed to require that each village have definite and perfectly contiguous boundaries, the property rights of all families who own land near the borders of villages --- the Sialegas' title to Avau no less that the Taitos' title to Oneoneloa --- might be divested at a stroke of the mapmaker's pen.

---

[1] This land, to the west of Oneoneloa, is referred to by both parties to this litigation as Ote. Both the Sialegas and the Taitos claim to be the owners of Ote. This court expresses no opinion on the question.

The uncertainty about the historic title to Oneoneloa might be rendered moot by the provision of A.S.C.A.§ 37.0120 that "actual, open, notorious, hostile, exclusive and continuous occupancy of real estate for 30 years confers a title thereto by adverse possession, which is sufficient against all." There was testimony in the record to the effect that the Taitos have been living exclusively, continuously, openly, and notoriously on Oneoneloa for at least thirty years, and that their occupancy has been hostile to the claim of the Sialegas in that no service has been rendered to the senior matai of the Sialega family. The plaintiffs' failure to rebut this testimony, however, may be explained by the fact that it was apparently offered to corroborate the Taitos' claim to historic ownership rather than to establish a claim by adverse possession.

Although the concept of prescription or adverse possession was developed by Western legal systems to resolve precisely such controversies as this one, we are reluctant to apply it without a more thorough and deliberate exposition of the facts and arguments by both sides. Many Samoan families allow other families to live on their land, and in enacting the adverse possession statute the Fono cannot have intended to punish or deter this traditional form of generosity too severely. If the Taitos originally came to occupy Oneoneloa as guests of the Sialegas, some definite signal to the host family should be necessary to convert the occupancy from "friendly" to "hostile" in order to begin the statutory period of adverse possession.

We therefore defer decision of this case pending another hearing at which counsel for both parties should adduce evidence on the following points:

1) What was the understanding of the parties thirty to forty years ago about the nature of the Taitos' occupancy of Oneoneloa? (We note that direct evidence on this point was in conspicuously short supply at the first hearing. The senior matai of the Taito family, whom we understand to be residing in Hawaii, did not testify. The Sialega family likewise presented little or no direct evidence of the situation during this crucial period. Neither party called as witnesses the elderly members of the Taito family who are said to be residing with the Sialegas.)

43.

2) If the Taitos were understood at that time to be guests of the Sialegas, what acts did they subsequently perform that were unequivocally inconsistent with the Sialegas' continued ownership of Oneoneloa?

3) If the Taitos began at some point to act as owners of the land, what acts did the Sialegas perform to give notice of their objection to the Taitos' assertion of ownership?

We are reluctant to require the expenditure of further time and money on this case by the parties and by the Court. In future cases we intend to decide as best we can on the basis of the evidence and arguments presented at the first hearing. In light of the uncertain relationship between the concept of adverse possession and customary Samoan hospitality, however, and in light of the large number of families that could be affected, we defer decision pending plenary consideration of this issue.